ROBERT F. KRAMER (Bar No. 181706)
rkramer@feinday.com
M. ELIZABETH DAY (Bar No. 177125)
eday@feinday.com
DAVID ALBERTI (Bar No. 220625)
dalberti@feinday.com
RUSSELL S. TONKOVICH (Bar No. 233280)
rtonkovich@feinday.com
MARC BELLOLI (Bar No. 244290)
mbelloli@feinday.com
NICHOLAS V. MARTINI (Bar No. 237687)
nmartini@feinday.com
AIDAN M. BREWSTER (Bar No. 319691)
abrewster@feinday.com
FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP
577 Airport Blvd., Suite 250
Burlingame, CA 94010
Telephone:  (650) 825-4300
Facsimile:  (650) 460-8443

Attorneys for Plaintiff
POLARIS POWERLED TECHNOLOGIES, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A,, INC.,<br><br>Defendants. | Case No. 8:20-cv-00125<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Polaris PowerLED Technologies, LLC ("Polaris PowerLED"), by and through its undersigned counsel, files this Complaint for Patent Infringement relating to several U.S. patents as identified below (collectively, the "Patents-in-Suit") and alleges as follows:

## THE PARTIES

1.      Plaintiff Polaris PowerLED Technologies, LLC ("Polaris PowerLED" or "Plaintiff") is a Delaware limited liability company, with its address at 32932 Pacific Coast Highway #14-498, Dana Point, California, 92629.

2.      Defendant LG Electronics, Inc. ("LG Electronics"), is a corporation organized under the laws of the Republic of Korea with its principal place of business at LG Twin Towers, 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Republic of Korea, 07736.

3.      Defendant LG Electronics USA, Inc. ("LG USA") is a corporation organized under the laws of Delaware with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 (LG Electronics and LG USA are collectively referred to as "LG" or "Defendants").

## JURISDICTION AND VENUE

4.      Polaris PowerLED brings this civil action for patent infringement pursuant to the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Upon information and belief, LG transacts and conducts business in this District and the State of California, and is subject to the personal jurisdiction of this Court.  Upon information and belief, LG has minimum contacts within the State of California and this District and has purposefully availed itself of the privileges of conducting business in the State of California and in this District. Polaris PowerLED's causes of action arise directly from LG's business contacts and other activities in the State of California and in this District.

6.      Upon information and belief, LG has several regular and established places of business in California.

7.      Upon information and belief, LG has a regular and established place of business at 9415 Kaiser Way, Fontana, CA, 94335.

8.      Upon information and belief, LG has a regular and established place of business at 5565 Sierra Ave, Fontana, CA, 92336.

9.      Upon information and belief, LG has a regular and established place of business at 2021 S. Archibald Ave, Ontario, CA 91761.

10.      Upon information and belief, LG has a regular and established place of business at 9050 Hermosa Ave, Rancho Cucamonga, CA, 91730.

11.      Upon information and belief, LG has a regular and established place of business at 11600 Millennium Ct, Rancho Cucamonga, CA, 91730.

12.      Personal jurisdiction exists over each of the Defendants because each Defendant has sufficient minimum contacts with this forum as a result of business conducted within this State and this District, including doing business at the above mentioned regular and established places of business.

13.      Upon information and belief, LG has committed acts of infringement, both directly and indirectly, within this District and the State of California by, *inter alia*, using, selling, offering for sale, importing, advertising, and/or promoting products that infringe one or more claims of the Patents-in-Suit.

14.      LG, directly and/or through intermediaries, uses, sells, ships, distributes, offers for sale, advertises, and otherwise promotes its products in the United States, the State of California, and this District.

15.      In addition, each of the Defendants, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing televisions and mobile devices into the stream of commerce knowing they will be sold and used in this State, and economically benefits from the retail sale of infringing televisions and mobile devices in this State.  For example, Defendants' products have been sold

and are available for sale in this District at Best Buy, Target, Howard's, and Fry's Electronics retail stores, and are also available for sale and offered for sale in this District through online retailers such as Amazon, Best Buy, and Fry's Electronics. Defendants also advertise their infringing products to consumers in this State and this District through the LG USA website.  *See, e.g.*, https://www.lg.com/us/tvs and https://www.lg.com/us/mobile.

16.     Upon information and belief, LG solicits customers in the State of California and this District and has customers who are residents of the State of California and this District and who use LG's products in the State of California and in this District.

17.     In addition, LG Electronics has availed itself of this Court by filing patent litigation suits within this district.

18.     LG Electronics has filed suit against a competitor, Hisense, in this district, alleging patent infringement, in a case captioned *LG Electronics Inc. v. Hisense Electronics Manufacturing Company of America Corporation; HISENSE USA CORPORATION; HISENSE INTERNATIONAL (HONG KONG) AMERICA INVESTMENT CO., LIMITED (f/k/a HISENSE INTERNATIONAL AMERICA HOLDINGS CO., LIMITED); HISENSE INTERNATIONAL (HK) CO., LIMITED; Hisense International Co. Ltd.; Qingdao Hisense Electronics Co. Ltd. (f/k/a Hisense Electric Co., Ltd.); and Hisense Co., Ltd.*, Case No. 2:19-cv-9474, in the Central District of California, Western Division.

19.     To the extent any foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over the Defendant in this State and this District would be consistent with due process and this State's long-arm statute in light of facts alleged in this complaint.

20.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 1400(b), based on LG's business registration in this State and physical presence and business addresses in this District.

**THE PATENTS-IN-SUIT**

21.     Polaris PowerLED owns the entire right, title, and interest in U.S. Patent No. 7,239,087 titled "Method and Apparatus to Drive LED Arrays Using Time Sharing Technique" (the "'087 Patent"). The '087 Patent issued on July 3, 2007 to inventor Newton E. Ball from the U.S. Patent Application No. 11/011,752, filed on Dec. 14, 2004. A true and correct copy of the '087 Patent is attached as **Exhibit A** to this Complaint.

22.     Polaris PowerLED owns by the entire right, title, and interest in U.S. Patent No. 8,223,117 titled "Method and Apparatus to Control Display Brightness with Ambient Light Correction" (the "'117 Patent"). The '117 Patent issued on July 17, 2012 to inventor Bruce R. Ferguson from the U.S. Patent Application No. 12/336,990, filed on Dec. 17, 2008. A true and correct copy of the '117 Patent is attached as **Exhibit B** to this Complaint.

**COUNT I**

**(INFRINGEMENT OF U.S. PATENT NO. 7,239,087)**

23.     Polaris PowerLED incorporates by reference paragraphs 1-22 above.

24.     Mr. Newton E. Ball invented a novel manner of arranging and controlling light sources that was a significant advance in improving display quality in electronics products such as televisions. Mr. Ball patented these innovations in the '087 patent.

25.     Claim 1 of the '087 Patent, for example, reads as follows:

> 1. A multi-load time sharing driver comprising:
>
> a current source configured to provide a regulated current;
>
> a network of semiconductor switches coupled in series; and
>
> a plurality of light sources in a backlight system, each light source associated with a semiconductor switch, wherein the semiconductor switch selectively opens to allow the associated light source to conduct the regulated current.

26. LG has directly and indirectly infringed, and continues to directly and indirectly infringe one or more claims of the '087 patent, including at least claim 1 of the '087 Patent, literally and/or under the doctrine of equivalents, by or through making, using, offering for sale, selling within the United States, and/or importing into the United States televisions, including, for example, LG's 55UJ7700 TVs and other products that contain local dimming and TruMotion features in violation of 35 U.S.C. § 271(a). The devices listed in this paragraph are collectively referred to in this Count as the "Accused Products."

27. The Accused Products have "a multi-load time sharing driver comprising: a current source configured to provide a regulated current." The Accused Products include, for example, an LED control board, power supply, and main board which includes components (such as multi-channel LED drivers and transistors) for individually controlling strings of LEDs in the TV backlight.

28. The exemplary LG 55UJ7700 includes an LED control board, power supply, and main board which includes components (such as multi-channel LED drivers and transistors) for individually controlling strings of LEDs in the TV backlight.



[LED Control Board/Power Board and Mainboard for LG 55UJ7700]

29.     The LED control board is coupled to several sections of LEDs.  In the 55UJ7700, for example, there are six (6) different sections, each including twenty (20) LEDs.  These six (6) zones are consistent with LG's marketing of the product as featuring "Local Dimming," as well as the TruMotion feature.

**PICTURE QUALITY**

| | | | |
|---|---|---|---|
| ULTRA HD (3840x2160) | Yes | Refresh Rate | TruMotion 120 (Refresh Rate 60Hz) |
| Active HDR with Dolby Vision™ | Yes | HDR Effect | Yes |
| Wider Color Gamut | Yes | True Color Accuracy | Yes |
| IPS Technology | Yes | Ultra Luminance | Yes |
| 4K Upscaler | Yes | Local Dimming | Yes |

[55UJ7700 specifications at https://www.lg.com/us/tvs/lg-55UJ7700-4k-uhd-tv]

**LED Local Dimming**

Maximizes the contrast ratio by making the bright areas of the screen brighter and the dark areas of the screen darker.

 · Off : Disables the LED Local Dimming function.
 · Low / Medium / High : Changes the contrast ratio.

 • Turning this option Off may increase energy consumption.

**TruMotion**

Optimizes the image quality of fast-moving pictures.

 · Off : Turns off the TruMotion.
 · Smooth : Softens fast-moving pictures.
 · Clear : Makes fast-moving pictures clearer.
 · Clear Plus : Makes fast-moving pictures clearer using the backlight control.
 · User : Sets De-Judder/De-Blur manually.

   ◦ De-Judder : Adjusts juddering on the screen.
   ◦ De-Blur : Reduces the blurring effects of motion.

[LG 55UJ7700 manual, https://www.lg.com/us/support/product/lg-55UJ7700.AUS]

30.     The Accused Products include a current source configured to provide a regulated current.  The exemplary LG 55UJ7700 TVs include a power supply IC and associated circuitry that provide a resonant switch mode power supply.

1
2
3
4
5
6
7
8
9
10
11



12    [LG 55UJ7700 Power Supply Board]

13         31.    Through the LED power connection port, power is supplied from the

14    power supply board to the LED control board that contains the LED driver,

15    switches, and other circuitry.  In addition, the resonant switch mode power supply

16    in conjunction with each LED driver chip and their associated circuitry serve as a

17    current source and provide a regulated current (through each of the respective LED

18    strings).  When the device is turned on, the power supply provides a regulated

19    current that flows through each of the respective LED strings.  The current through

20    each of the strings can be individually controlled by the LGP06B LED driver chip

21    depending on the needs of the display.

22
23
24
25
26
27
28



[LGP06B LED Driver Chip in LG 55UJ7700]

32.    The LED control board in the LG 55UJ7700, for example, includes components which provide a regulated current to the LEDs.



ST Microelectronics4NF 20L  N-channel 200 V, 1.1 Ω, 1 A SOT-223 low gate charge STripFET™ II Power MOSFET used for switching (The board has 6 of these components)

[4NF20L N-Channel FETs and LGP06B Chip on LG 55UJ7700 LED Control Board]

33.     LG advertises various features and functionality evidencing that this claim is present in the Accused Products.  For example, LG advertises local dimming in the LG 55UJ7700.

PICTURE QUALITY

| ULTRA HD (3840x2160) | Yes | Refresh Rate | TruMotion 120 (Refresh Rate 60Hz) |
|---|---|---|---|
| Active HDR with Dolby Vision™ | Yes | HDR Effect | Yes |
| Wider Color Gamut | Yes | True Color Accuracy | Yes |
| IPS Technology | Yes | Ultra Luminance | Yes |
| 4K Upscaler | Yes | Local Dimming | Yes |

[55UJ7700 specifications at https://www.lg.com/us/tvs/lg-55UJ7700-4k-uhd-tv]

34.     The Accused Products have "a network of semiconductor switches coupled in series."  For instance, the Accused Products include an LED control board with LED drivers coupled to both a switch mode power supply and one or more semiconductor switches.

35.     The exemplary LG 55UJ7700 TV includes a network of semiconductor switches coupled in series, including as follows: The LED control board includes an LGP06B LED driver chip.  The LGP06B LED driver includes a semiconductor switch for each section of LEDs.  Each section comprises twenty (20) LEDs.

- 10 -



ST Microelectronics4NF 20L  N-channel 200 V, 1.1 Ω, 1 A SOT-223 low gate charge STripFET™ II Power MOSFET used for switching (The board has 6 of these components)

[4NF20L N-Channel FETs and LGP06B Chip on LG 55UJ7700 LED Control Board]

36.    The LGP06B LED driver supports six (6) sections of LEDs and is associated with semiconductor switches for each section, including six (6) 4NF20L N-Channel FETs.  The 4NF20L N-Channel FETs ("N-Channel FETs") are semiconductor switches.  The LGP06B LED driver receives a regulated current from the resonant switch mode power supply.  The resonant switch mode power supply comprises a power supply IC and associated circuitry, including a pair of semiconductor switches coupled in series.  The LGP06B LED driver chip in the LG 55UJ7700 is coupled to the resonant switch mode power supply and its associated circuitry and the N-Channel FETs, such that the two semiconductor switches associated with the resonant switch mode power supply are coupled in series with each of the N-Channel FETs (i.e., semiconductor switches).

37.    In addition, the N-Channel FETs are a network of semiconductor switches coupled in series with the "current source configured to provide a regulated current" (as identified above) and the plurality of light sources (as identified below).  There is thus a "a network of semiconductor switches coupled in series."

38.     The Accused Products have "a plurality of light sources in a backlight system, each light source associated with a semiconductor switch, wherein the semiconductor switch selectively opens to allow the associated light source to conduct the regulated current."

39.     The LG Accused Products include a plurality of light sources (LEDs) in a backlight system, each light source associated with a semiconductor switch, wherein the semiconductor switch selectively opens to allow the associated light source to conduct the regulated current.  Each of these semiconductor switches is controlled by an associated LED driver.  The control board is coupled to strings of LEDs (e.g., light sources).  In the LG 55UJ7700, for example, there are six (6) sections of twenty (20) LEDS, comprising a total of six (6) zones.  The semiconductor switch selectively opens to allow the associated light source to conduct the regulated current.  Each semiconductor switch is associated with an LED driver in the LG Accused Products.  The LED drivers in the LG Accused Products are configured to implement local dimming by selectively controlling these semiconductor switches.

40.     LG also has indirectly infringed and continues to indirectly infringe the '087 patent by inducing and contributing to infringement by customers and third parties of the '087 patent.  LG's users, customers, agents or other third parties who use those devices in accordance with LG's instructions infringe at least claim 1 of the '087 Patent, in violation of 35 U.S.C. § 271(a).  Because LG intentionally instructs its customers to infringe through training videos, demonstrations, brochures and user guides, such as those located at: www.lg.com, https://www.lg.com/us/support, https://www.lg.com/us/experience-tvs/local-dimming, https://www.lg.com/us/experience-tvs/full-array-dimming, https://www.lg.com/us/support/video-tutorials/adjusting-picture-settings-webos-20-video-CT10000018-1433250653383, https://www.lg.com/ca_en/support/product-help/CT20098005-20150226846632-poor-picture-quality-or-poor-color, and

https://www.lg.com/us/support/help-library/tv-video-lag-CT10000020-20150774974899, LG is liable for infringement of the '087 Patent under 35 U.S.C. § 271(b).

41.    LG is on notice of its infringement of the '087 Patent by no later than August 29, 2019 by virtue of a letter from counsel for Polaris PowerLED to the President of LG Electronics, Inc., the Chairmen & CEO of LG Corporation and the CEO & President of LG Electronics U.S.A., Inc.

42.    By the time of trial, LG will have known and intended (since receiving such notice) that its continued actions would actively induce the infringement of at least claim 1 of the '087 Patent.

43.    Additionally, LG has been on notice of the '087 Patent since at least January 17, 2008, when Patent Publication No. WO2008007925A1 to LG Innotek Co., Ltd. was published, which cites the '087 Patent as prior art.

44.    Upon information and belief, Defendants' past and continuing infringement has been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to Plaintiff pursuant to 35 U.S.C. § 285.

45.    By at least as early as August 29, 2019, Defendants had actual knowledge or should have known of the '087 Patent and that their activities were infringing this patent.  After receiving actual knowledge of the '087 Patent, Defendants have continued to make, use, sell, offer for sale, and/or import infringing products into the United States despite knowing that there was a high likelihood of infringement.

46.    As a result of LG's infringement of the '087 Patent, Polaris PowerLED has suffered monetary damages and is entitled to no less than a reasonable royalty for LG's use of the claimed inventions of the '087 Patent, together with interest and costs as determined by the Court.  Polaris PowerLED will continue to suffer damages in the future unless LG's infringing activities are enjoined by this Court.

47.     Polaris PowerLED will be irreparably harmed unless a permanent injunction is issued, enjoining LG and their agents, employees, representatives, affiliates, and others acting in concert with LG from infringing the '087 Patent.

## COUNT II

## (INFRINGEMENT OF U.S. PATENT NO. 8,223,117)

48.     Polaris PowerLED incorporates by reference paragraphs 1-47 above.

49.     Mr. Bruce Ferguson invented a novel manner of adjusting the brightness of a display screen in response to ambient light, conserving power, reducing eye strain, and significantly improving the experience of the user.  His inventions were a significant advance in the field of display technology, power conservation and power control for electronics products, including televisions and other devices.  Mr. Ferguson patented these innovations in the '117 Patent.

50.     Claim 1 of the '117 Patent, for example, reads as follows:

1. A brightness control circuit with selective ambient light correction comprising:

a first input configured to receive a user signal indicative of a user selectable brightness setting;

a light sensor configured to sense ambient light and to output a sensing signal indicative of the ambient light level;

a multiplier configured to selectively generate a combined signal based on both the user signal and the sensing signal; and

a dark level bias configured to adjust the combined signal to generate a brightness control signal that is used to control a brightness level of a visible display such that the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero.

51.     LG has directly and indirectly infringed, and continues to directly and indirectly infringe one or more claims of the '117 patent, including at least claim 1 of the '117 Patent, literally and/or under the doctrine of equivalents, by or through

making, using, offering for sale, selling within the United States, and/or importing into the United States televisions, including, for example, LG's 55UJ7700 TVs (the "Accused TV Products") and other consumer electronics display products such as mobile devices (the "Accused Smartphone Products")  that contain ambient light sensors and automatic brightness control features in violation of 35 U.S.C. § 271(a).

52.     The Accused TV Products have "a brightness control circuit with selective ambient light correction comprising: a first input configured to receive a user signal indicative of a user selectable brightness setting," including auto brightness control, backlight and brightness circuitry, and associated user signals. For example, the Accused TV Products direct users to adjust the Backlight level and to enable or disable the "Energy Saving" feature described below via the settings menus in the exemplary LG 55UJ7700 TV user manuals:



[LG 55UJ7700 manual, https://www.lg.com/us/support/product/lg-55UJ7700.AUS]

53.     The Accused TV Products have "a light sensor configured to sense ambient light and to output a sensing signal indicative of the ambient light level" as shown below.  The front portion of the Accused TV Products include an ambient light sensor that outputs a sensing signal indicative of the ambient light level.  For

example, the exemplary LG 55UJ7700 has a light sensor facing the front of the television, shown below.



Ambient light sensor and IR sensor

54.     The Accused TV Products have "a multiplier configured to selectively generate a combined signal based on both the user signal and the sensing signal." The Accused TV Products include a multiplier implemented at least in part in software to generate a combined signal based on the user signal, which includes the brightness setting input by a user, and a sensing signal, including signaling from a light sensor.

55.     After receiving the user signal and the sensing signal, software on the Accused TV Products processes software variables associated with the user signal and/or the sensing signal.  This processing includes, for example, scaling or converting the variables.  The processing also includes generating a combined signal.  The combined signal is generated based on both the user signal and the sensing signal.  The combined signal may also be generated based on variables that are derived from the user signal and sensing signal.  The process of generating the combined signal includes multiplication.  Software on the Accused TV Products stores the combined signal in a software variable.  The software variable can be, for example, an integer or float.

56.     For example, testing of the exemplary LG 55UJ7700 TV shows a multiplicative adjustment to the brightness curve based on the user-selectable Backlight setting when Auto Energy Saving is enabled.  The scaling of the brightness curve shown in the data below plainly indicates the presence of a multiplier combining the Backlight setting with the ambient light signal in determining the brightness control signal.



LUX vs. TV Display Luminance at Energy Savings Mode (AUTO)
[Brightness =  50 (default) and 10 (user defined)]

57.     The Accused TV Products have "a dark level bias configured to adjust the combined signal to generate a brightness control signal that is used to control a brightness level of a visible display such that the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero."  The software and/or hardware included in the Accused TV Products adjusts the combined based on the user and sensing signals to generate a signal that controls the brightness of the Accused TV Products maintaining the brightness level of the display above a predetermined level when the ambient brightness is approximately zero.  These hardware components include, for example, a processor and solid-state storage that runs an operating system and/or additional software for adjusting a combined signal to generate a brightness control signal to control the brightness of the television display.  The solid-state storage may be implemented in the form of a NAND-based flash drive.

- 17 -

58.     The dark level bias is a software variable that is used to adjust the combined signal, which is generated based on the user signal and the sensing signal.  A software function or mathematical equation is used in conjunction with the dark level bias and the combined signal in order to generate a brightness control signal.  For example, the dark level bias may be a variable or set of variables input into a function to maintain the brightness control signal above a predetermined value.  The brightness control signal is a software variable or function that is used to control the brightness of the display in the Accused TV Products.

59.     When the ambient light level decreases to approximately zero, the dark level bias is used to control the brightness control signal such that the brightness control signal is maintained above a predetermined level of brightness.  As shown in testing of the exemplary LG 55UJ770 TV's brightness curve, the dark level bias prevents the brightness control signal from dropping below a predetermined level when the ambient light level decreases to approximately zero.



60.     LG has directly and indirectly infringed, and continues to directly and indirectly infringe one or more claims of the '117 Patent, including at least claim 1 of the '117 Patent, literally and/or under the doctrine of equivalents, by or through making, using, offering for sale, selling within the United States, and/or importing into the United States the Accused Smartphone Products including, for example, LG's V Series and G Series smartphones, and other consumer electronics display

products that contain ambient light sensors and automatic brightness control features in violation of 35 U.S.C. § 271(a).

61.     The Accused Smartphone Products have "a brightness control circuit with selective ambient light correction comprising: a first input configured to receive a user signal indicative of a user selectable brightness setting," including auto brightness control, backlight and brightness circuitry, and associated user signals.  For example, the Accused Smartphone Products direct users to adjust the Backlight level and to enable or disable the "Energy Saving" feature described below via the settings menus in the exemplary LG V40 ThinQ user manual:

- Proximity/Ambient light sensor
  - Proximity sensor: During a call, the proximity sensor turns off the screen and disables touch functionality when the device is in close proximity to the human body. It turns the screen back on and enables touch functionality when the device is outside a specific range.
  - Ambient light sensor: The ambient light sensor analyzes the ambient light intensity when the auto-brightness control mode is turned on.

[LG V40 ThinQ manual, https://www.lg.com/us/support/product/lg-LMV405UA3.ASPRBK]

- **Brightness**: Use the slide bar to change the device's screen brightness. To automatically adjust screen brightness according to ambient light intensity, tap the **Auto** switch.

[LG V40 ThinQ manual, https://www.lg.com/us/support/product/lg-LMV405UA3.ASPRBK]

62.     This automatic brightness adjustment feature can be adjusted by moving the brightness slider bar, as shown in the below photo of the brightness adjustment screen.  Additionally, this feature can be turned off.  Thus, the Accused Smartphone Products include a brightness control circuit with selective ambient light correction.



[LG V40 ThinQ]

63.     The Accused Smartphone Products have "a light sensor configured to sense ambient light and to output a sensing signal indicative of the ambient light level" as shown below.  The light sensor may be mounted such that it faces the front or the back of the Accused Smartphone Products.  The light sensor measures ambient light and outputs a sensing signal indicative of the ambient light.  Software running on the Accused Smartphone Products stores the sensing signal.  For example, the Accused Smartphone Products' software may store the sensing signal in a software variable that represents the ambient light level.  For example, the exemplary LG V40 ThinQ manual explicitly advertises that the light sensor is used in the "auto-brightness control mode":

- • Proximity/Ambient light sensor
  - - Proximity sensor. During a call, the proximity sensor turns off the screen and disables touch functionality when the device is in close proximity to the human body. It turns the screen back on and enables touch functionality when the device is outside a specific range.
  - - Ambient light sensor. The ambient light sensor analyzes the ambient light intensity when the auto-brightness control mode is turned on.

[LG V40 ThinQ manual, https://www.lg.com/us/support/product/lg-LMV405UA3.ASPRBK]

64.     The Accused Products have "a multiplier configured to selectively generate a combined signal based on both the user signal and the sensing signal."  The user signal is indicative of a user selectable brightness setting.  The Accused

- 20 -

Smartphone Products include, for example, a menu in which a user provides a user signal indicative of a user selectable brightness setting.

65.     A user navigates to a display menu to provide the user signal by using the brightness slide bar to adjust the screen brightness.

> • **Brightness**: Use the slide bar to change the device's screen brightness. To automatically adjust screen brightness according to ambient light intensity, tap the **Auto** switch.

[LG V40 ThinQ manual, https://www.lg.com/us/support/product/lg-LMV405UA3.ASPRBK]

66.     The light sensor may be mounted such that it faces the front or the back of the Accused Smartphone Products.  The light sensor measures ambient light and outputs a sensing signal indicative of the ambient light.  Software running on the Accused Smartphone Products stores the sensing signal.  For example, the Accused Smartphone Products' software may store the sensing signal in a software variable that represents the ambient light level.

> • Proximity/Ambient light sensor
> - Proximity sensor: During a call, the proximity sensor turns off the screen and disables touch functionality when the device is in close proximity to the human body. It turns the screen back on and enables touch functionality when the device is outside a specific range.
> - Ambient light sensor: The ambient light sensor analyzes the ambient light intensity when the auto-brightness control mode is turned on.

[LG V40 ThinQ manual, https://www.lg.com/us/support/product/lg-LMV405UA3.ASPRBK]

67.     The Accused Smartphone Products include hardware components for running software which includes a multiplier configured to selectively generate a combined signal based on both the user signal and the sensing signal.  These hardware components include, for example, a processor and solid-state storage that runs an operating system and/or additional software for generating a combined

signal.  The solid-state storage may be implemented in the form of a NAND-based flash drive.

68.     After receiving the user signal and the sensing signal, software on the Accused Smartphone Products processes software variables associated with the user signal and/or the sensing signal.  This processing includes, for example, scaling or converting the variables.  The processing also includes generating a combined signal.  The combined signal is generated based on both the user signal and the sensing signal.  The combined signal may also be generated based on variables that are derived from the user signal and sensing signal.  The process of generating the combined signal includes multiplication.  Software on the Accused Smartphone Products stores the combined signal in a software variable.  The software variable can be, for example, an integer or float.  As shown below, the exemplary LG V40 ThinQ combines the light sensor signal and user signal multiplicatively in order to generate the combined signal, to which a dark level bias is applied.



69.     The Accused Smartphone Products have "a dark level bias configured to adjust the combined signal to generate a brightness control signal that is used to control a brightness level of a visible display such that the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero."  The Accused Smartphone Products include hardware

components for running software which includes a dark level bias configured to adjust the combined signal to generate a brightness control signal that is used to control a brightness level of a visible display such that the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero. These hardware components include, for example, a processor and solid-state storage that runs an operating system and/or additional software for generating a combined signal. The solid-state storage may be implemented in the form of a NAND-based flash drive.

70.     After receiving the user signal and the sensing signal, software on the Accused Smartphone Products processes software variables associated with the user signal and/or the sensing signal. This processing includes, for example, scaling or converting the variables. The processing also includes generating a combined signal. The combined signal is generated based on both the user signal and the sensing signal. The combined signal may also be generated based on variables that are derived from the user signal and sensing signal.

71.     The dark level bias is a software variable that is used to adjust the combined signal, which is generated based on the user signal and the sensing signal. A software function or mathematical equation is used in conjunction with the dark level bias and the combined signal in order to generate a brightness control signal. For example, the dark level bias may be a variable or set of variables input into a function to maintain the brightness control signal above a predetermined value. The brightness control signal is a software variable or function that is used to control the brightness of the display in the Accused Smartphone Products.

72.     When the ambient light level decreases to approximately zero, the dark level bias is used to control the brightness control signal such that the brightness control signal is maintained above a predetermined level of brightness.

73.     LG also has indirectly infringed and continues to indirectly infringe the '117 Patent by inducing and contributing to infringement by customers and

third parties of the '117 Patent.  LG's users, customers, agents or other third parties

who use those devices in accordance with LG's instructions infringe at least claim 1

of the '117 Patent, in violation of 35 U.S.C. § 271(a).  Because LG intentionally

instructs its customers to infringe through training videos, demonstrations,

brochures and user guides, such as those located at: www.lg.com,

https://www.lg.com/us/support/help-library/lg-tv-picture-menu-settings-

CT10000018-1374855198623, https://www.lg.com/us/support/video-tutorials/lg-tv-

troubleshooting-dark-or-blurry-picture-CT10000020-1441915401150,

https://www.lg.com/us/support/help-library/troubleshooting-dark-or-dim-picture-tv-

CT10000018-1432651636835, https://www.lg.com/us/support/help-library/how-

can-i-improve-the-battery-life-of-my-android-device-CT10000025-

20150357036679, https://www.lg.com/us/support/product/lg-55UJ7700.AUS,

https://www.lg.com/us/support/product/lg-LMV405UA3.ASPRBK,

https://www.lg.com/uk/support/product-help/CT00008356-20150122818443-

others, https://www.lg.com/eastafrica/support/product-help/CT20279022-

1440413459879-others, and https://www.lg.com/au/support/product-

help/CT32000461-1440406117105-others, LG is liable for infringement of the '117

Patent under 35 U.S.C. § 271(b).

74.     LG also received notice of its infringement of the '117 Patent by no

later than August 29, 2019 by virtue of a letter from counsel for Polaris PowerLED

to the President of LG Electronics, Inc., the Chairmen & CEO of LG Corporation

and the CEO & President of LG Electronics U.S.A., Inc.

75.     By the time of trial, LG will have known and intended (since receiving

such notice) that its continued actions would actively induce the infringement of at

least claim 1 of the '117 Patent.

76.     Additionally, LG has been on notice of the '117 Patent since at least

August 13, 2013, when Patent Publication No. KR101296564B1 to LG Display Co

Ltd. was published, which cites the '117 Patent as prior art.  The '117 Patent was

cited as prior art in additional LG Patent Publications, such as KR101318081B1 to LG Display Co Ltd., published on October 14, 2013, KR101631958B1 to LG Electronics Inc., published on June 20, 2016, and KR20160139677A to LG Display Co Ltd., published on December 7, 2016.

77.     On information and belief, Defendants' past and continuing infringement has been deliberate and willful, and this case is therefore an exceptional case, which warrants award of treble damages and attorneys' fees to Plaintiff pursuant to 35 U.S.C. § 285.

78.     By at least as early as August 29, 2019, LG had actual knowledge or should have known of the '117 Patent and that its activities were infringing this patent.  After receiving actual knowledge of the '117 Patent, Defendants have continued to make, use, sell, offer for sale, and/or import infringing products into the United States despite knowing that there was a high likelihood of infringement.

79.     As a result of LG's infringement of the '117 Patent, Polaris PowerLED has suffered monetary damages and is entitled to no less than a reasonable royalty for LG's use of the claimed inventions of the '117 Patent, together with interest and costs as determined by the Court.  Polaris PowerLED will continue to suffer damages in the future unless LG's infringing activities are enjoined by this Court.

80.     Polaris PowerLED will be irreparably harmed unless a permanent injunction is issued enjoining LG and their agents, employees, representatives, affiliates, and others acting in concert with LG from infringing the '117 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Polaris PowerLED requests the following relief from this Court:

(A)     A judgment that Defendants have infringed one or more claims of the '087 patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement;

(B)     A judgment that Defendants have infringed one or more claims

of the '117 patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement;

(C) Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

(D) Treble damages for willful infringement pursuant to 35 U.S.C. § 284;

(E) An order and judgment permanently enjoining LG and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringement of the Patents-in-Suit;

(F) A judgment that this is an exceptional case and awarding Polaris PowerLED its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

(G) A judgment granting Polaris PowerLED such further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

81. Polaris PowerLED hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.


DATED:  January 21, 2020


By: */s/ Robert F. Kramer*
Robert F. Kramer

Attorneys for Plaintiff
POLARIS POWERLED TECHNOLOGIES,
LLC